UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| DEVIN THIBODEAUX, ET AL. | CIVIL ACTION NO. 6:21-0061 |
| VERSUS | JUDGE DAVID C. JOSEPH |
| ADAM BERNHARD, ET AL. | MAGISTRATE JUDGE WHITEHURST |

### REPORT AND RECOMMENDATION

Pending before the undersigned magistrate judge is the "F.R.C.P. 12(b)(6) Motion to Dismiss" [Doc. 24] filed by defendants Adam Bernhard, Seth Bernhard, Kenneth W. Bernhard, and Kerkas, LLC ("collectively, "defendants"). The motion is opposed by the plaintiffs, Devin Thibodeaux and Herby Angelle ("plaintiffs") [Doc. 30], and the defendants filed a reply brief [Doc. 33]. For the following reasons, IT IS RECOMMENDED that the motion before the Court be deemed a Motion to Dismiss Pursuant to Rule 12(b)(1), that the motion be GRANTED, and that the plaintiffs' claims be dismissed for lack of subject matter jurisdiction.

### FACTUAL BACKGROUND

As set forth in a previous ruling of the Court, the instant lawsuit arises out of a confrontation between the plaintiffs and defendants while the plaintiffs were attempting to crawfish in an area known as "Lost Lake." Plaintiffs, Herby Angelle

and his grandson Devin Thibodeaux, are licensed commercial crawfishermen. Plaintiffs allege that on or about January 25, 2020 and for weeks before then, they had been laying their crawfish traps in "Lost Lake," which is located along the flooded banks of the Atchafalaya River. Plaintiffs allege that Lost Lake is situated just across the river from the unincorporated village of Butte Larose, in St. Martin Parish, Louisiana. Plaintiffs further allege that area in which the incident which give rise to this lawsuit occurred is on a waterway which is located over lands owned by defendants Kenneth Bernhard and Kerkas, LLC, which is owned by Kenneth Bernhard. Defendant Adam Bernhard, Kenneth Bernhard's adult son, manages the properties and is in charge of overseeing them on behalf of Kenneth Bernhard and his corporation.

Plaintiffs allege that on the date in question, they were in the process of harvesting their crawfish traps in this waterway when Seth Bernhard and two other unidentified men "forcefully intercepted" the skiff occupied by Devin Thibodeaux. Herby Angelle was in another skiff located a short distance away and was summoned to join them. Plaintiffs allege that Bernhard verbally accosted them, declared they were trespassing, and ordered that they retrieve their traps, exit the property, and never return. Adam Bernhard summoned a Sheriff's deputy, who shortly thereafter

issued a criminal trespass citation to each of the plaintiffs.[1] The plaintiffs allege that there was no room in the small skiffs to collect and transport the 700 crawfish traps in the Lost Lake area. Plaintiffs returned the next day to begin retrieving their traps. It took 2 ½ days to retrieve the traps from Lost Lake, then multiple days to reset the traps in areas other than Lost Lake.

Plaintiffs filed suit on January 11, 2021, alleging that the defendants' actions were, in effect, a conversion under Louisiana and federal common law, because they caused the plaintiffs to have to pull up their traps and left them unable to harvest crawfish in the days following the incident. The plaintiffs allege they suffered suffer economic damages in the amount of $30,000 each, which they seek in damages as lost sales, as well as all court costs. In their Complaint, the plaintiffs allege that this Court has jurisdiction over the case under federal maritime law, as the acts complained of occurred within the historically and factually navigable waters of the Atchafalaya River.

On March 31, 2021, the defendants filed a Motion to Dismiss, or Alternatively, for More Definite Statement, [Doc. 6]; that motion sought dismissal on grounds the Court lacked subject matter jurisdiction over the plaintiffs' claims

---

[1] In their original Complaint, the plaintiffs alleged that the citations are currently pending with the St. Martin Parish Sheriff and have not been referred for prosecution; the status of those citations is unclear at this time.

under Rule 12(b)(1) of the Federal Rules of Civil Procedure. After review of those briefs, the Court concluded that the plaintiffs' pleadings did not put the defendants on sufficient notice of the alleged location of the complained-of incident, nor did the allegations regarding the actions of the defendants contain sufficient facts for this Court to determine whether there was the requisite connection to maritime activity to satisfy *Grubart*. Therefore, the Court denied the motion to dismiss, but allowed the plaintiffs to amend their complaint to address the foregoing deficiencies in pleading. On October 6, 2021, the plaintiffs filed their Second Amending Complaint [Doc. 21]. Thereafter, defendants filed the instant motion to dismiss, again seeking dismissal of all claims against them, but this time filing the motion pursuant to Rule 12(b)(6) for failure to sufficiently plead a maritime tort. The motion has been fully briefed and is now ripe for consideration.

## II. LAW AND DISCUSSION

**1. Legal standards**

As an initial matter, the undersigned notes that the instant motion was filed as a Rule 12(b)(6) motion to dismiss, which would limit this Court to consideration of the pleadings only and an analysis of whether the plaintiffs sufficiently allege their claims. However, consideration of whether the plaintiffs sufficiently state their claims necessarily leads to the question of whether this Court has subject matter

jurisdiction over the claims to begin with, even though no party has invoked Rule 12(b)(1). Because jurisdiction in this case is invoked under federal maritime law and plaintiffs assert that their claims allege maritime torts, the question of jurisdiction is properly raised. It is axiomatic that federal courts, both trial and appellate, have a continuing obligation to examine the basis for their jurisdiction. The issue may be raised by parties, or by the court *sua sponte,* at any time. Fed. R. Civ. P. 12(h)(3); *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990); *Baker Oil Tools, Inc. v. Delta S.S. Lines, Inc.,* 562 F.2d 938, 940 n.2 (5th Cir. 1977); *Oswalt v. Scripto, Inc.,* 616 F.2d 191 (5th Cir. 1980).

The analysis of whether the plaintiffs sufficiently allege maritime torts is concomitant with the question of whether this Court has jurisdiction over the claims, and the analysis is the same under *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (in order for a tort to be cognizable in admiralty, the same elements necessary for maritime jurisdiction must exist). Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). As opposed to a Rule 12(b)(6) motion, however, lack of subject matter jurisdiction may be found after an examination of: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *citing Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D.Tex.1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980). In evaluating jurisdiction, the Court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981).

Therefore, although the parties present this motion in the context of Rule 12(b)(6), cognizant of its continuing duty to examine the Court's jurisdiction, the undersigned will consider the instant motions under the standards of Rule 12(b)(1), an analysis that is the same as the analysis for determining whether the plaintiffs sufficiently allege a maritime tort.

### 2. Admiralty Jurisdiction

Under the *Grubart* test, for admiralty jurisdiction to exist over a tort claim, both the location and the connection-to-maritime-activity tests must be satisfied. *See In re Katrina Canal Breaches Litig.*, 324 F. App'x 370, 376 (5th Cir. 2009), *citing*

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). The *location test* requires the tort to have occurred on navigable water or for an injury suffered on land to have been caused by a vessel on navigable water. *Id.* (citing 46 U.S.C. §740); *see also Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey,* 183 F.3d 453, 456 (5th Cir.1999). An artificial canal can constitute a navigable body of water, provided it is used as "a highway for commerce between ports and places in different states". *In re Boyer,* 109 U.S. 629, 632, 3 S.Ct. 434, 27 L.Ed. 1056 (1884).

The *connection-to-maritime-activity test* has two parts. First, a court must assess the general features of the type of incident involved to determine whether the incident has a *potentially disruptive impact on maritime commerce.* Second, a court must determine whether *the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. Grubart,* 513 U.S. at 534, 115 S.Ct. 1043 (emphasis added; internal citations and quotation marks omitted); *see also, e.g., Texaco Exploration & Prod. v. AmClyde Engineered Prods. Co.,* 448 F.3d 760, 770–71 (5th Cir.2006); *Strong v. B.P. Exploration & Prod., Inc.,* 440 F.3d 665, 669 (5th Cir.2006). "The key inquiry is whether the allegedly tortious activity is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in

the suit at hand." *Strong,* 440 F.3d at 669 (citations and internal quotation marks omitted).

### a. **Location Test**

Although the defendants deny that the plaintiffs satisfy the location test, they do not argue the point and offer no evidence or argument that Lost Lake is not navigable. In their opposition brief, the plaintiffs argue that the following facts, contained in their Second Amending Complaint, establish that Lost Lake is a navigable waterway:

- The acts complained of herein occurred within the historically and factually navigable waters of the Atchafalaya River and more particularly, Lost Lake, in St. Martin Parish, Louisiana, which is now and always has been heavily used in commerce for transportation and commercial fishing. *See* Amended Complaint, Doc. 21, at Paragraph 2.

- Lost Lake is a "perched" lake, which is a perennial lake where the surface level lies at a considerably higher elevation than those of other bodies of water, including aquifers directly or closely associated with the lake. Lost Lake is a water of the Atchafalaya River. It is replenished by the rising and falling waters of the Atchafalaya River. Lost Lake is accessed by a navigable channel (referred to herein as the "Channel") connecting the Atchafalaya River with Lost Lake. *Id.* at Paragraph 2 (A).

- The lake known as Lost Lake ("Lost Lake") and the channel access to it (the "Channel") from the Atchafalaya River at point 30.2944892, -91.6496129 and continuing through its meander to the edge of the core of Lost Lake at 30.2985122, -91.68560284 is used and is susceptible of being used, in their ordinary condition, as highways of commerce over which trade and travel are or may be

8

      conducted in customary modes of trade and travel over water. *Id.* at Paragraph 2 (B).

- Lost Lake and the Channel access to Lost Lake form in their ordinary condition by themselves or by uniting with other waters, a continued highway over which commerce is or may be carried out with other States or foreign countries in which such commerce is conducted by water. *Id.*

- Lost Lake and its access Channel, in their qualities and quantitative data, are almost identical to Lake Rycade, which is located just to the south. *Id.*

These facts are largely taken from the August 9, 2021 report of G. Paul Kemp, Ph.D. of G. Paul Kemp & Associates, LLC., a geologist and oceanographer who plaintiff argues has qualified in a number of state and federal courts as an expert in fluvial and coastal sedimentology. *See* Second Amending Complaint, Doc. 21, Exhibit 1. In his report, Dr. Kemp compares the navigability of Lost Lake to that of Lake Rycade, a body of water found to be navigable by Judge Rebecca Doherty in *Meche, et al vs. Glenn Richard*, 2007 WL 534152 (W. D. La. Feb. 26, 2007) (Civil Action No. 05-0385), finding that "the facts in [the] Lost Lake [case] are virtually identical to [those] in Lake Rycade with respect to navigability and access."

Having considered the jurisprudence and the report of Dr. Kemp, and further considering lack of any argument to the contrary, it appears that Lost Lake (and the channel access to it) are navigable waterways. For the reasons that follow, however,

this Court need not make a finding as to the location test, because it is clear that the plaintiffs fail to satisfy the connection test.

### b. Connection to Maritime Activity Test

As stated above, the connection to maritime activity test has two subpart tests: First, a court must assess the general features of the type of incident involved to determine whether the incident has a *potentially disruptive impact on maritime commerce.* Second, a court must determine whether *the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. Grubart,* 513 U.S. at 534, 115 S.Ct. 1043 (emphasis added; internal citations and quotation marks omitted); *see also, e.g., Texaco Exploration & Prod. v. AmClyde Engineered Prods. Co.,* 448 F.3d 760, 770–71 (5th Cir.2006); *Strong v. B.P. Exploration & Prod., Inc.,* 440 F.3d 665, 669 (5th Cir.2006). "The key inquiry is whether the allegedly tortious activity is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Strong,* 440 F.3d at 669 (citations and internal quotation marks omitted).

With respect to the first "connection" test, the court looks to "the general features of the type of incident involved," which must have "a potentially disruptive impact on maritime commerce." The court uses "a description of the incident at an

intermediate level of possible generality," that is neither too broad to distinguish among cases nor too narrow to recognize potential effects on maritime commerce. *See Grubart*, 513 U.S. at at 538-39. *See also In Re Louisiana Crawfish Producers*, 772 F.3d 1026, 1029 (5th Cir. 2014). Here, the plaintiffs allege that they were engaged in the business of harvesting crawfish for sale to commercial processors, retailer, and consumers and that the defendants directly disrupted and prevented them from crawfishing, and from harvesting crawfish from hundreds of traps. Plaintiffs assert that fishing by boat is an activity traditionally subject to admiralty laws and crawfishing is a specific type of fishing. The Court concludes that the general features of the incident at issue – the defendants' interference with the plaintiffs' ability to harvest crawfish from their traps – has a *potentially disruptive impact on maritime commerce*. Accepting the allegations as true, the incident at issue poses more than a "fanciful risk" to the plaintiffs' commercial interest. *Grubart,* 513 U.S. at 538-539. Thus, the Court concludes that the first element of the connection test has been met.

Notwithstanding the foregoing, the plaintiff fails to satisfy the second prong of the connection test. This second prong -- whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity – focuses on the activities of the defendants at the time of the

11

incident. *See, e.g., Evans v. TIN, Inc.*, 2012 WL 3028460, *2 (E.D. La. July 16, 2012) (". . . the focus of the second prong of the connection test is on [defendant] TIN's activities, which were not substantially related to any traditional maritime activities."). *See also Nguyen v. Do*, 579 Fed. App'x 284, *1-2 (5th Cir. Aug. 28, 2014) (unpublished). In the instant case, the defendants' activities, as alleged by the plaintiffs, include harassment, verbal accosting, declaration of trespass, and orders to leave the property. Such claims involve actions that are typically Louisiana state law claims. Accordingly, the Court concludes that these activities do not bear a *substantial* relationship to traditional maritime activity. For obvious reasons, these activities bear no particular maritime flavor and can naturally occur in any place, whether located on land or water. While the claimed torts at issue are alleged to have occurred on navigable water and may have a potentially disruptive impact on maritime commerce, the focus of the second prong of the connection test is on the defendants' activities, which were not substantially related to any traditional maritime activities.[2] Simply put, the alleged tortious activity in this matter is not so closely related to activities traditionally subject to admiralty law. *See, e.g., In Re*

---

[2] The undersigned notes that while the plaintiffs allege that the defendants' actions interfered with their ability to harvest crawfish at the time of the incident, they acknowledge that they were able to go back and retrieve their crawfish nets from Lost Lake the next day and reset the traps in other areas. Additionally, the incident was limited to the date in question and to the two crawfisherman, who are the plaintiffs in this case.

*Louisiana Crawfish Producers*, 772 F.3d 1026, 1030 (5th Cir. 2014) (in case analyzing the issue of whether plaintiffs sufficiently stated a claim for maritime tort, court found "pipeline construction and repair" does not show "a substantial relationship to traditional maritime activity," and therefore plaintiff did not state a claim for a maritime tort).

As the only basis for jurisdiction asserted by plaintiffs is under 28 U.S.C. § 1333, and as the Court finds that the plaintiffs cannot state a viable claim for maritime torts against these defendants, the undersigned concludes that the claims should be dismissed for lack of subject matter jurisdiction.

## IV. CONCLUSION

Thus, for the foregoing reasons, IT IS RECOMMENDED that the motion before the Court be deemed a Motion to Dismiss Pursuant to Rule 12(b)(1), that the motion be GRANTED, and that the plaintiffs' claims be DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the

time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 23rd day of March, 2022.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE