## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| **DEVIN THIBODEAUX, ET AL** | **CIVIL DOCKET NO. 6:21-CV-00061** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **ADAM BERNHARD, ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM ORDER

Before the Court is the REPORT AND RECOMMENDATION ("R&R") of the Magistrate Judge previously filed herein [Doc. 35] making recommendations as to the disposition of a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") [Doc. 24] filed by Defendants, Adam Bernhard, Kenneth W. Bernhard, Seth Bernhard, and Kerkas, LLC (collectively, "Defendants"), in which they assert that this Court is without admiralty jurisdiction over this dispute.

The R&R recommends:

(i)     that this Court consider the Motion as one seeking dismissal for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1); and

(ii)    that the Motion be granted, and Plaintiffs' claims be dismissed without prejudice – finding that the general character of the activity giving rise to the Plaintiffs' claims is not sufficiently related to traditional maritime activity to satisfy the "Maritime Activity Test" established in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).

Plaintiffs timely filed objections to the R&R on April 19, 2022, [Doc. 38], to which Defendants responded [Doc. 39] on May 2, 2022.  After considering the R&R, the objections of the Plaintiffs, applicable law, and after conducting an independent

review of the record, the Court sustains the Defendants' objections and adopts in part and overrules in part the R&R.

For the reasons that follow, the Court remands this matter to the Magistrate Judge to: (i) hold an evidentiary hearing to establish the location "where the alleged wrong took effect," *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey,* 183 F.3d 453, 456 (5th Cir. 1999); (ii) determine whether such location is a navigable waterway that meets the "location" test for federal maritime jurisdiction; and (iii) issue a report and recommendation as to the final disposition of the Motion.

## BACKGROUND

On January 11, 2021, Plaintiffs filed a complaint alleging that they sustained economic damage when Defendants unlawfully prevented them from harvesting crawfish in "Lost Lake," an area located along the flooded banks of the Atchafalaya River and owned by Defendants.[1]   [Doc. 1, p. 3].   Plaintiffs, both of whom are commercial crawfishermen, allege, generally, that on January 25, 2020, while they were attempting to retrieve their crawfish traps in Lost Lake, Defendants Adam Bernhard and Seth Bernhard forcefully intercepted Plaintiffs' skiff with their own boat, verbally accosted them, and ordered them to retrieve their traps and never return.   [*Id.* at p. 5].   The Defendants also summoned a St. Martin Parish Sheriff's deputy to issue criminal trespass citations.   [*Id.*].   Plaintiffs assert that this incident prevented them from harvesting crawfish in that area for the remainder of the

---

[1]     The Plaintiffs thereafter filed two amended complaints.   The Court incorporates by reference the R&R's recitation of the procedural background in this matter.   [Doc. 35, pp. 3-4].

season, hindered their ability to engage in commercial crawfishing, thus disrupting maritime commerce, and caused them to suffer economic damage.  [*Id.* at p. 6]. Plaintiffs also assert that they are entitled to damages because of Defendants' conversion of their property.  [*Id.*].

Defendants filed the instant Motion on November 16, 2021, seeking dismissal of this matter on the basis that Plaintiffs are unable to meet the "connection to traditional maritime activity test," and suggesting that the Court's resolution of this issue would obviate the need for an evidentiary hearing to determine Lost Lake's navigability. [Doc. 24].  In this regard, Defendants contend that Plaintiffs' allegations do not establish a claim in admiralty, but instead amount to mere "garden-variety Louisiana state law claims."  [*Id.* at p. 9].  Notably, Defendants also contend without argument that Plaintiffs' claims do not meet the "location" test.  [*Id.* at p. 6].

Plaintiffs oppose the Motion and urge that their claims are within this Court's admiralty jurisdiction because: (i) Lost Lake, where the alleged tort occurred, is a navigable waterway; (ii) maritime commerce was disrupted because Plaintiffs were engaged in commercial fishing on navigable water at the time of the alleged tort; and (iii) the alleged tort included "actual interception of boats engaged in commerce [and] coercive expulsion of fishing boats from navigable waters, satisfying the "very broa[d]" interpretation that courts should use when deciding whether an alleged tort bears a "substantial relationship to traditional maritime activity."  [Doc. 30].

## REPORT AND RECOMMENDATION

When considering Defendant's Motion, the Magistrate Judge appropriately found that although Defendants filed it pursuant to Rule 12(b)(6), consideration of

the sufficiency of Plaintiffs' claims requires a threshold finding that this Court has subject-matter jurisdiction.  [Doc. 35].  In this respect, the Magistrate Judge noted that the framework for a court's analysis of whether the Plaintiffs have alleged facts sufficient to establish a maritime tort is essentially the same as that which confers admiralty jurisdiction.  [Doc. 35, pp. 4-5].  *See, Grubart*, 513 at 534.  Considering the Motion as one seeking dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1), then, the R&R finds that the Plaintiffs have failed to plead facts establishing a connection to a traditional maritime activity and recommends that the Motion be granted.  [Doc. 35, p. 6].

In reaching this result, the R&R:

(1)   notes that Lost Lake "appears" to be a navigable water but declines to make a dispositive determination as to whether the "location" test is met in this case [Doc. 35, p. 9];

(2)   finds that the Plaintiffs' allegations meet the first element of the "connection" test, in that the Defendants' actions had the potential to disrupt maritime commerce because the incident at issue involved "the Defendants' interference with the Plaintiffs' ability to harvest crawfish from their traps" [Doc. 35, p. 11]; and

(3)   finds that the Plaintiffs have failed to allege facts sufficient to meet the second element of the "connection" test, *i.e.,* that "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity" [Doc. 35, pp. 11-13].

Critical to the R&R's finding that Plaintiffs' claims fail to establish a "substantial relationship to traditional maritime activity" (and its ultimate recommendation that this matter be dismissed for lack of subject-matter jurisdiction), is the R&R's characterization of the Defendants' alleged conduct giving rise to the

4

incident as "harassment, verbal accosting, declaration of trespass, and orders to leave the property."  [*Id*.].

<u>LAW AND ANALYSIS</u>

Jurisdiction is a threshold issue and one to which federal courts must remain attentive throughout the course of a litigation.  *See generally, Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).  In this case, the Court must first establish whether the facts alleged state a claim over which it has jurisdiction.  This Court therefore agrees with the Magistrate Judge's determination that the instant Motion is properly considered under Rule 12(b)(1).  [Doc. 35, p. 5].

## I.    **Legal Standard**

"Subject-matter jurisdiction is essential for the federal judiciary to hear a case." *The Lamar Company v. Miss. Trans. Comm'n*, 976 F.3d 524, 528 (5th Cir. 2020). Unlike other issues such as personal jurisdiction, subject-matter jurisdiction "can never be waived or forfeited." *Gonzalez* 565 U.S. at 141. Courts must consider whether subject-matter jurisdiction exists in every case.  *Id.*  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

Under Rule 12(b)(1), the party asserting jurisdiction has the burden of proof. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  Therefore, when faced with a challenge to the existence of subject-matter jurisdiction, the plaintiff bears the burden to show that subject-matter jurisdiction exists. *Menacha v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Federal admiralty jurisdiction is vested exclusively in district courts for any case raising an admiralty or maritime claim,

"saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333.  When a party seeks to invoke a district court's federal admiralty jurisdiction provided in 28 U.S.C. § 1333 over a tort claim, that party bears the burden of establishing the existence of maritime tort jurisdiction by meeting both a "location" test and a "connection" test.  *See generally*, *Grubart*, 513 U.S. at 534 (1995).

In ruling on a motion to dismiss for lack of subject-matter jurisdiction, a district court may base its decision on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (quoting *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989)). When deciding whether subject-matter jurisdiction exists, a Court may evaluate disputed facts and is not required to give a presumption of truthfulness to the plaintiff's purported facts.  *Williamson v. Tucker*, 645 F. 2d 404, 413 (5th Cir. 1981). However, a motion to dismiss under Rule 12(b)(1) should only be granted "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

## II.   Parties' Arguments

Plaintiffs' objections to the R&R argue that the Magistrate Judge ignored key facts in issuing the R&R, namely that Defendants were in the course of "patrolling" the navigable waterway when they intentionally collided with Plaintiffs' boat, thus interfering with both Plaintiffs' navigation and their commercial fishing.  [Doc. 38-1].

6

Plaintiffs maintain that this type of activity falls within the scope of 33 C.F.R. § 83.18(a)(iii) which requires that "a power-driven vessel underway shall keep out of the way of a vessel engaged in fishing," and that, as such, federal regulation of this activity alone shows that it is traditionally maritime in nature.  [Doc. 38-1, pp. 8-10]. Additionally, Plaintiffs contend that the Magistrate Judge's finding that they have failed to meet the second element of the "connection" test runs contrary to established jurisprudence and adopting the R&R would create a "split" in this district.  [*Id.* at pp. 8-12].  Defendants oppose the Plaintiffs' objection and ask that the Court affirm the R&R dismissing Plaintiffs' claims.  [Doc. 39].

After a *de novo* review of the record, and for the reasons that follow, the Court sustains the Plaintiffs' objection and adopts in part and overrules in part the R&R. The Court recommits this matter to the Magistrate Judge to conduct an evidentiary hearing regarding the location of the alleged incident.  28 U.S.C. § 636(b)(1)(C).

### III.     Admiralty Jurisdiction Over Maritime Torts

The authority of a district court to hear cases that are admiralty in nature originates directly from the United States Constitution.  *See*, U.S. Const., Art. III, § 2, cl. 1; 28 U.S.C. § 1333.  Initially, the only requirement for admiralty jurisdiction to exist over a tort claim was that the tort occurred on navigable water.  *Thomas v. Lane*, 23 F. Cas. 957, 960 (C.C.D. Me. 1833). Thus, for federal admiralty jurisdiction to attach, the injury must only have been "wholly sustained" on navigable water.  *The*

*Plymouth*, 70 U.S. 20, 35 (1865).  In the 150-year period that followed, statutory and jurisprudential changes added new contours to the scope of admiralty jurisdiction.[2]

The modern framework for determining the scope of admiralty jurisdiction was developed in four seminal cases: *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio; Foremost Ins. Co. v. Richardson*; *Sisson v. Ruby; and Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.; see also,* Maraist, Galligan, Sutherland, and Kuebel, *Admiralty in a Nutshell* 40-46 (8th ed. 2022); 409 U.S. 249 (1972); 457 U.S. 668 (1982); 497 U.S. 358 (1990); 513 U.S. 527 (1995).  In *Executive Jet*, the Court first stated that using only a "location" test to determine admiralty jurisdiction can create irrational results and held that the alleged incident must also bear "a significant relationship to traditional maritime activity."  409 U.S. at 260-61.  In *Foremost*, the Court affirmed its prior finding that both location and connection are required and further noted that connection to maritime commerce exists when the alleged incident both has the potential to disrupt maritime commerce and has a connection to traditional maritime activity.  457 U.S. at 674-75 (1972).  The *Sisson* Court thereafter crafted a two-step inquiry for determining whether there is a connection to maritime activity: (1) whether the incident causing the harm is likely to disrupt commercial maritime activity; and (2) whether the incident causing the harm has a substantial

---

[2]      The *Plymouth* rule was effectively changed in 1948 when Congress enacted the Extension of Admiralty Jurisdiction Act, which provided that admiralty jurisdiction "extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." 46 U.S.C.A. § 30101.  The Supreme Court explained the Extension of Admiralty Jurisdiction Act as encompassing torts that occurred on vessels while on navigable waters, but with the effects and impact being felt on land. *See, Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 209-10 (1963).

relationship to traditional maritime activity.   497 U.S. at 363-67 (1990).   *Grubart* further refined the two-step "connection" analytical framework and represents the current state of the law of admiralty jurisdiction.  Maraist, *supra* at 40-46; 513 U.S. at 534.

## IV.   The *Grubart* Test

Under the two-part *Grubart* test, admiralty jurisdiction can be exercised over a tort where both the "location test" and the "connection test" are satisfied.  *Id*.  The "location" test requires, in general terms, that a tort occur on navigable water or that an injury suffered on land was caused by a vessel on navigable water.   *Id*.   The "connection" test requires that: (1) the "general features of the type of incident involved" have "a potentially disruptive impact on maritime commerce," and (2) the "general character of the activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."  *Id.* (quoting *Sisson* 497 at 363-65 (internal quotations omitted)); Maraist, *supra* at 46.

### a.  Location Test

When deciding whether admiralty jurisdiction exists over a tort, the Court must first determine whether the alleged tort occurred on navigable water by looking, "to where the alleged wrong took effect rather than to the locus of the allegedly tortious conduct." *Egorov,*183 F.3d at 456. Here, Plaintiffs allege that the tort occurred on the navigable waters of Lost Lake.  [Doc. 21].  In this respect, they allege that Lost Lake is susceptible of being used as a highway of commerce because it is accessible by fishing vessels and has historically been used in commerce by hunters, trappers, fishermen, and crawfishermen.  [*Id*.]; *Sanders v. Placid Oil Company*, 861

F. 2d 1374, 1377 (5th Cir. 1988).  Plaintiffs also assert that Lost Lake is essentially identical in nature to Lake Rycade which another court in this district found to be navigable in fact and in law.  [Doc. 21, p. 3 (citing *Meche v. Richard*, 2007 WL 634154 at * 3 (W.D. La. Feb. 26, 2007))].  Defendants dispute the navigability of Lost Lake but provide no argument or explanation as to the nature of their disagreement.  [Doc. 24-1, p. 6].  However, even without any stated basis of disagreement by the Defendants, the "location" test is a disputed issue of fact that is critical to the exercise of this Court's jurisdiction.  The issue therefore must be set for an evidentiary hearing for the Court to decide whether Lost Lake is "navigable" for purposes of admiralty jurisdiction.  *See Williamson*, 645 at 413 (holding that a court may hold an evidentiary hearing to "hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction.").

### b.  Connection Test

#### i.  Potential to Disrupt Maritime Commerce

Next, when evaluating the first element of the "connection" test, the Court should "as[k] whether the incident could be seen within a class of incidents that pos[e] more than a fanciful risk to commercial shipping."  *Grubart*, 513 U.S. at 539.  The Fifth Circuit directs district courts to use "a description of the incident at an intermediate level of possible generality that is neither too broad to distinguish among cases nor too narrow to recognize potential effects on maritime commerce."  *In re Crawfish Producers*, 772 F. 3d 1026, 1029-30 (5th Cir. 2014) (quoting *Grubart*, 513 U.S. at 538-39) (internal quotations omitted)).

Here, the R&R classifies the incident as, "the defendants' interference with the plaintiffs' ability to harvest crawfish from their traps," and concludes that this activity has the potential to disrupt maritime commerce.  [Doc. 35, p. 11].  The Court agrees with the R&R's description in this regard and further agrees that this type of incident has the potential to disrupt maritime commerce.

### ii.  Substantial Relationship to Traditional Maritime Activity

When evaluating the second element of the "connection" test, the Court need only determine if the tortfeasor's activity is "so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply."  *Grubart*, 513 U.S. at 539.  This consideration requires the Court to identify the "general character of the activity giving rise to the incident," in a way that avoids hyper-generalization, focusing only on the "particular circumstances of the incident," or "eliminating the maritime aspect of the tortfeasor's activity from consideration."  *Id*. at 542; *Sisson*, 497 U.S. at 364.  Although the Supreme Court has acknowledged that determining the "general character of the activity giving rise to the incident" is an imprecise endeavor, it has emphasized that a court must refrain from defining the character at "such a high level of generality [as] to eliminate any hint of maritime connection."  *Grubart,* 513 U.S. at 541-42.

Here, the R&R classifies the "general character of the activity" as "harassment, verbal accosting, declaration of trespass, and orders to leave the property" and finds that these actions are not substantially related to traditional maritime activity.  [Doc. 35].  Though this description of the Defendants' alleged conduct is certainly accurate,

11

the Court finds it deficient in two important respects.  First, the R&R's description fails to encompass Plaintiffs' allegation that, "while harvesting crawfish and re-baiting traps from his boat, Plaintiff Thibodeaux was forcefully intercepted and stopped by Defendant Bernhard…" [Doc. 21, p. 5].   The Defendants' alleged intentional obstruction of a navigable vessel warrants a more precise description than mere "harassment."  Second, the R&R's description fails to account for the reason for the Defendants' alleged behavior – to impede Plaintiffs from freely navigating their vessels in the Lost Lake area of the Atchafalaya Basin while conducting commercial crawfishing activities.  *See, e.g., Meche v. Richard*, 2007 WL 634152 at *3 (W.D. La. Feb. 26, 2007) (finding a connection to traditional maritime activity where the incident at issue was "intentional rifle fire at a vessel on navigable waters" and the court determined the general character giving rise to the incident was "intentional obstruction of vessels' navigation in navigable waters").

Having deemed the R&R's description of the allegations overly general, the Court has undertaken a review of applicable case law in deciding how to appropriately capture the "general character of the [tortfeasor's] activity giving rise to the incident."  *See, e.g.*, *Sisson*, 497 at 362-65 (finding a connection to traditional maritime activity where the incident at issue was "a fire that began on a noncommercial vessel at a marina located on a navigable waterway" and the general character giving rise to the incident was "storage and maintenance of a vessel at a marina on navigable waters"); *Grubart*, 513 U.S. at 539-40 (finding a connection to traditional maritime activity where the incident at issue was "damage by a vessel in navigable water to an underwater structure" and the general character giving rise to

12

the incident was "navigation of boats in navigable water"); *Louisiana Crawfish Producers Ass'n – West v. Amerada Hess Corp.,* 2015 WL 7176111 at * 8 (W.D. La. Nov. 12, 2015) (finding a connection to traditional maritime activity where the general character of the conduct giving rise to the incident was "dredging of a navigation canal, conducted from a vessel, on navigable waters … to facilitate [defendant's] navigation to its well site;" and *Gruver v. Lesman Fisheries, Inc.,* 489 F.3d 978, 986 (9th Cir. 2007) (finding a connection to traditional maritime activity where the incident at issue was an "assault" and the general character giving rise to the incident was "failure to pay wages for maritime services performed aboard a commercial vessel"); *see also,* distinguishable cases in *In re Louisiana Crawfish Producers,* 772 F.3d at 1029-30 (finding no connection to traditional maritime activity where the incident at issue was "obstruction of water flows" and the general character giving rise to the incident was "pipeline construction and repair"); and *In re Katrina Canal Breaches Litigation,* 324 Fed.Appx. 370, 380 (5th Cir. 2009) (finding no connection to traditional maritime activity where the incident at issue was "dredging of canals" and the general character giving rise to the incident was "construction/repair work performed from a vessel to allow proper drainage of the City's flood water" because "the improvement project implicated only local, land-based interests.")

Consistent with the pleadings in this case and applicable precedent, the Court finds an appropriate description of the "general character" of Defendants' activities giving rise to Plaintiffs' allegations is their alleged *physical obstruction of a navigable vessel, verbal threats, and other intimidating actions designed to impede commercial*

13

*fishing and navigation.*  Given this description, the general character of the activity giving rise to Plaintiffs' claims clearly has a "maritime nexus" and both elements of the "connection" test are therefore met under the facts presented.  *Grubart*, 513 U.S. at 541.

## CONCLUSION

IT IS HEREBY ORDERED that the Court sustains Plaintiffs' objections, ADOPTING IN PART and OVERRULING IN PART the R&R as stated herein, and REMANDS this matter to the Magistrate Judge for further proceedings.

IT IS FURTHER ORDERED that the Magistrate Judge shall hold an evidentiary hearing to make factual findings pertaining to: (i) the location "where the alleged wrong took effect," and (ii) whether such location is a navigable waterway that operates to establish admiralty jurisdiction over this dispute. *Egorov, Puchinsky, Afanasiev*, 183 F.3d at 456.

IT IS FURTHER ORDERED that the Magistrate Judge shall thereafter issue a report and recommendation as to the final disposition of the Motion.

THUS, DONE AND SIGNED in Chambers on this 7th day of June 2022.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE