UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**DEVIN THIBODEAUX, ET AL**      **CIVIL DOCKET NO. 6:21-CV-00061**

**VERSUS**      **JUDGE DAVID C. JOSEPH**

**ADAM BERNHARD, ET AL**      **MAGISTRATE JUDGE CAROL B. WHITEHURST**

## MEMORANDUM RULING

Before the Court is the REPORT AND RECOMMENDATION ("R&R") of the Magistrate Judge previously filed herein. [Doc. 69]. The R&R makes recommendations as to the disposition of a MOTION TO DISMISS pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") filed by Defendants, Adam Bernhard, Kenneth W. Bernhard, Seth Bernhard, and Kerkas, LLC (collectively, "Defendants"). [Doc. 24]. The Motion argues as a general matter that this Court lacks admiralty jurisdiction over this dispute and requests that the claims asserted by Plaintiffs Devin Thibodeaux and Herby Angelle (collectively, "Plaintiffs") be dismissed. *See generally id.* Given that the Motion seeks a determination of this Court's subject matter jurisdiction, the Court previously determined that it should be considered "as one seeking dismissal for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." [Doc. 40].

On June 7, 2022, the Court adopted in part and overruled in part a Report and Recommendation (the "First R&R") by the assigned Magistrate Judge recommending that the Motion be granted. [Doc. 40]. The Court then remanded the Motion to the Magistrate Judge to hold an evidentiary hearing and make factual findings

Page 1 of 14

regarding: (i) the location "where the alleged wrong took effect," and (ii) "whether that location [Lost Lake] is a navigable waterway that meets the 'location test' for federal maritime jurisdiction[.]"[1]  *Id.*  The Magistrate Judge subsequently held an evidentiary hearing on February 8, 2023, and, after considering the evidence presented therein, concluded that "the most logical approach is to exercise jurisdiction on the grounds of federal question with supplemental jurisdiction over Plaintiffs' state law claims."  [Doc. 69, p. 25].  Defendants timely filed Objections to the R&R on April 24, 2023.  [Doc. 74].

After conducting an independent review of the record, the Court accepts the evidence received at the evidentiary hearing conducted by the Magistrate Judge and adopts the relevant factual findings of the R&R as discussed and cited herein.  *See* [Doc. 69, pp. 3–9].  However, upon careful consideration of the R&R and Defendants' Objections to same, the Court finds it necessary to supplement the factual findings

---

[1] As this Court has previously explained, the presence of admiralty jurisdiction is a two-pronged inquiry.  *See* [Doc. 40, p. 9] ("[A]dmiralty jurisdiction can be exercised over a tort where both the 'location test' and the 'connection' test are satisfied … The 'location' test requires [] that a tort occur on navigable water or that an injury suffered on land was caused by a vessel on navigable water.").

Defendants have filed a Motion for Reconsideration, [Doc. 70], of the Court's previous ruling on this Motion [Doc. 40], arguing that "[P]laintiffs' claims [should] be dismissed for lack of subject matter jurisdiction" because Plaintiffs have not satisfied the "connection test" required by *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), and its progeny.  *See generally* [Doc. 70-1].  Notwithstanding the question of navigability, however, the Court already found that the facts alleged by Plaintiffs are sufficient to invoke this Court's admiralty jurisdiction.  *See* [Doc. 40, pp. 10–14] (finding the "connection test" satisfied because the incident giving rise to this dispute "has the potential to disrupt maritime commerce" and bears a "substantial relationship to traditional maritime activity.").  The Defendants' Motion for Reconsideration does not raise sufficient grounds for the Court to now re-examine its prior ruling – which, in any event, was decided a full year ago.  The Defendant's Motion for Reconsideration [Doc. 70] is therefore DENIED.

and legal conclusions reached by the Magistrate Judge to make a final determination as to the navigability of Lost Lake and the existence of admiralty jurisdiction – the only basis of federal jurisdiction alleged by the Plaintiffs.

For the reasons that follow, the Court finds that Lost Lake is a navigable waterway providing this Court with admiralty jurisdiction over this dispute. Accordingly, Defendants' Motion [Doc. 24] is DENIED.

## BACKGROUND

The Plaintiffs in this case, Herby Angelle and his grandson, Devin Thibodeaux, are commercial fisherman who trap and harvest crawfish in North America's largest floodplain swamp, the Atchafalaya River Basin (the "Basin"). [Doc. 40, p. 2]. One of the areas of the Basin frequently crawfished by Plaintiffs is "Lost Lake," an inland body of water located near the community of Butte LaRose. Lost Lake is connected to the Atchafalaya River by a small canal, but is otherwise surrounded by recreational property owned by Defendants. *Id.*

Plaintiffs' claims arise out of an incident on January 25, 2020, where Defendants allegedly interrupted Plaintiffs' crawfishing efforts on Lost Lake by "forcefully intercept[ing]" Plaintiffs' skiff before "verbally accosting [Plaintiffs]" with profanity and threats of violence. [Doc. 21, ¶ 5]. Plaintiffs describe the incident as follows:

> On January 25, 2020, while harvesting crawfish and re-baiting traps from his boat, Plaintiff Thibodeaux was forcefully intercepted and stopped by Defendant Seth Bernhard and two other unidentified men, who were also in Bernhard's boat. After stopping Thibodeaux, Defendant summoned Angelle to join them. The Defendant then began verbally accosting Plaintiffs by yelling: "Mother F--kers, I'm tired of this.

> I'm going the whip your asses. You're trespassing and get the f--k out of here. Y'all are going to jail, Mother F--kers. Let's take it to the bank and I'll whip your asses. Take your f--king traps out of here and don't come back. Y'all are going to jail if you do." Plaintiffs continued harvesting and re-baiting their traps, while Defendant, in his boat, paralleled their movements and continued accosting them until a St. Martin Parish deputy arrived approximately two hours later … Plaintiffs were told they were trespassing, to pick up their traps and leave immediately, and to never to return to … Lost Lake. Plaintiffs were not allowed to complete the day's harvesting from the remaining traps, and they could not retrieve their crawfish traps before they left[.]

*Id.* Plaintiffs filed suit on January 11, 2021, invoking this Court's admiralty jurisdiction and seeking monetary damages for lost profits and conversion of their crawfish traps. [Doc. 1, ¶ 2] (citing 28 U.S.C. 1333); *see also* [Doc. 21] (Plaintiffs' Second Amended Complaint). On November 16, 2021, Defendants filed the instant Motion pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), arguing generally that this Court lacks subject matter jurisdiction over this dispute. *See* [Doc. 24].

The Magistrate Judge, considering Defendants' Motion under Federal Rule of Civil Procedure Rule 12(b)(1), issued the First R&R on the Motion on March 23, 2022. *See* [Doc. 35]; *see also* [Doc. 40, pp. 3–4] (where the Court notes that "although Defendants filed [the Motion] pursuant to Rule 12(b)(6), consideration of the sufficiency of Plaintiffs' claims requires a threshold finding that this Court has subject-matter jurisdiction … [which necessarily means] that the [] Motion is properly considered under Rule 12(b)(1)."). The First R&R found that "[Plaintiffs'] claims should be dismissed for lack of subject matter jurisdiction" because "the alleged tortious activity in this matter is not [] closely related to activities traditionally subject to admiralty law." [Doc. 35, pp. 12–13]. The Court adopted in part and

overruled in part the First R&R on June 7, 2022, finding instead that "the general character of the activity giving rise to Plaintiffs' claims [] has a 'maritime nexus' and both elements of the 'connection' test are therefore met under the facts presented." [Doc. 40, p. 14]. As a part of that same Order, the Court remanded the Motion to the Magistrate Judge to, *inter alia*, "[determine] whether [Lost Lake] is a navigable waterway that operates to establish admiralty jurisdiction over this dispute." *See id.*

The Magistrate Judge conducted an evidentiary hearing on February 8, 2023. *See* [Doc. 67] (the hearing transcript). The relevant factual findings of the Magistrate Judge are as follows:

(i) Lost Lake is a "perched lake situated in a crook of undeveloped swampland between the Atchafalaya River and the Butte LaRose Cutoff Channel."[2] [Doc. 69, p. 6]. It is surrounded primarily by recreational property owned by Defendants. *Id.* at pp. 5–6.

(ii) A 10-to-20-foot-wide canal runs from Lost Lake to the Atchafalaya River. *Id.* at p. 6. The Lake is accessible by water exclusively through a canal for roughly 110 days each year. *Id.* Notably, Lost Lake's accessibility coincides with crawfish season. *Id.*

(iii) The depth of Lost Lake fluctuates with the depth of the Atchafalaya River. *Id.* The Lake typically has a depth of 1.5–7.5 feet but, during particularly dry seasons, can "dr[y] up into ponds." *See id.* at pp. 6–7; [Doc. 67, p. 158]. At the time of the incident giving rise to this dispute, Lost Lake was approximately five feet deep. [Doc. 69, p. 7].

(iv) Although it first appeared on a map in the late 1960's, it is unclear when or how the canal connecting Lost Lake to the Atchafalaya River first developed. *Id.* at p. 8. However, the Magistrate Judge found that "[o]ver the past several decades, the [canal] grew, likely due to erosion, from a small ditch to a larger body of water

---

[2] As described in the R&R, a perched lake is "one in which the bottom of the lake is above the mean level of water in the surrounding river channels." [Doc. 69, p. 6 n.4].

    through which small boats, such as Plaintiffs' crawfish skiff[s], could pass [] when the water was high enough." *Id.*

(v)  Lost Lake was first identified by that name in 1968, but it has been cartographically identified as a "low-lying, swampy area with numerous iterations over the years." *Id.* at p. 7.

(vi)  The state of Louisiana does not "presently" assert ownership over "the bed and bottom" of Lost Lake." *Id.; see also* [Doc. 65]. However, commercial fisherman – including Plaintiffs – have crawfished Lost Lake for generations. *Id.*; *see also* [Doc. 67, pp. 19–74] (Plaintiffs' testimony adduced at the hearing).

After discussing Lost Lake's potential navigability, the R&R "decline[d] to explicitly find that Lost Lake is navigable in fact." *See* [Doc. 69., pp. 23–25]. Instead, the Magistrate Judge concluded that "given the unique legal and factual circumstances of this case … the most logical approach is to exercise jurisdiction on the grounds of federal question with supplemental jurisdiction over Plaintiffs' state law claims."[3] *Id.* (finding that "the possibility of a federal navigational servitude warrants the exercise of federal question jurisdiction under 28 U.S.C. §1331.").

Defendants filed an Objection to the R&R on April 24, 2023. [Doc. 74]. Defendants argue primarily that Lost Lake "[cannot] form an interconnected highway

---

[3]  "Under the well-pleaded complaint rule, a federal court does not have federal question jurisdiction unless a federal question appears on the face of the plaintiff's well-pleaded complaint." *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011). Here, the Plaintiffs' Complaint (as amended) only alleges the existence of admiralty jurisdiction pursuant to 28 U.S.C. § 1333. *See* [Doc. 21, ¶ 2]. Plaintiffs have not asserted any non-maritime federal causes of action, nor have the parties alleged, argued, or briefed that this litigation "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Though the Court may later find it necessary to decide whether a federal navigational servitude exists over Lost Lake, this fact alone does not provide the Court with sufficient basis to find § 1331 federal question jurisdiction over this dispute.

of commerce" because it only seasonally "communicates" with the Atchafalaya River and does not otherwise communicate with another body of water. *Id.* at pp. 6–9. The Court disagrees for the reasons described below.[4]

## LAW AND ANALYSIS

### I. Subject Matter Jurisdiction

Jurisdiction is a threshold issue and one to which federal courts must remain attentive throughout the course of a litigation. *See generally, Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Indeed, "[s]ubject-matter jurisdiction is essential for the federal judiciary to hear a case." *The Lamar Company v. Miss. Trans. Comm'n*, 976 F.3d 524, 528 (5th Cir. 2020). Unlike other issues such as personal jurisdiction, subject-matter jurisdiction "can never be waived or forfeited." *Gonzalez* 565 U.S. at 141. Courts must consider whether subject-matter jurisdiction exists in every case. *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

When a Rule 12(b)(1) motion is filed, the party asserting jurisdiction has the burden of proof. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In this

---

[4] To be clear, the Court's decision reaches only the issue of navigability-in-fact for purposes of "establish[ing] the limits of the jurisdiction of federal courts conferred by Art. III, § 2, of the United States Constitution over admiralty and maritime cases." *Kaiser Aetna v. United States*, 444 U.S. 164, 172 (1979). Importantly, the Court makes no determination as to whether the federal navigational servitude extends over Lost Lake, nor would a federal navigational servitude over Lost Lake necessarily permit Plaintiffs to harvest crawfish there. *See Parm v. Shumate*, 513 F.3d 135, 143. ("[T]he [federal] navigational servitude does not create a right to fish on private riparian land"). However, those issues are not ripe for determination and will only be decided to the extent necessary to resolve the maritime tort claims pending before the Court.

case, therefore, it is Plaintiffs who must demonstrate this Court's subject matter jurisdiction. *Menacha v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Federal admiralty jurisdiction is vested exclusively in district courts for any case raising an admiralty or maritime claim, "saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333. When a party seeks to invoke a district court's federal admiralty jurisdiction provided in 28 U.S.C. § 1333 over a tort claim, that party bears the burden of establishing the existence of maritime tort jurisdiction by meeting both a "location" test and a "connection" test. *See generally, Grubart,* 513 U.S. at 534 (1995).

In ruling on a motion to dismiss for lack of subject-matter jurisdiction, a district court may base its decision on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (quoting *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989)). When deciding whether subject-matter jurisdiction exists, a Court may evaluate disputed facts and is not required to give a presumption of truthfulness to the plaintiff's purported facts. *Williamson v. Tucker*, 645 F. 2d 404, 413 (5th Cir. 1981). However, a motion to dismiss under Rule 12(b)(1) should only be granted "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

## II. Jurisdictional Navigability

As cited in the R&R, "navigability" for purposes of federal admiralty jurisdiction is defined as follows:

> A body of water is navigable in law when it is navigable in fact. It is navigable in fact when it is "used, or [] susceptible of being used, in [its] ordinary condition, as [a] highway[] for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." A body of water constitutes navigable waters of the United States when it forms "in [its] ordinary condition by [itself], or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in which such commerce is conducted by water."

[Doc. 69, pp. 10–11] (citing *PPL Montana, LLC v. Montana*, 565 U.S. 576, 591–92 (2012), *The Daniel Ball*, 10 Wall. 557 (1871), and *Sanders v. Placid Oil Co.*, 861 F.2d 1374, 1377 (5th Cir. 1988)). Defendants maintain that Lost Lake "does not form an interconnected highway of commerce" because it only seasonally "communicates" with the Atchafalaya River and does not otherwise communicate with another body of water. [Doc. 74, pp. 8–9]. This argument is unpersuasive for three reasons.

First, both this Court and the Fifth Circuit have found that seasonal accessibility does not preclude a finding of navigability. *See Sanders v. Placid Oil Co.,* 861 F.2d 1374, 1377 (5th Cir.1988) ("[T]he fact that during certain seasons the access to Catahoula Lake via the Little River weir is nonnavigable is not determinative of federal admiralty jurisdiction."); *Boudreaux v. Louisiana Dep't of Wildlife & Fisheries*, 2014 WL 4219446, at *5 (W.D. La. Aug. 22, 2014) (a waterbody can be found navigable as long it is "navigable for a significant portion of time over a number of years") (internal quotations omitted); *see also Econ. Light & Power Co. v.*

*U.S.,* 256 U.S. 113, 122 (1921) (navigability "need [not] be [present] at all seasons of the year, or at all stages of the water."). Indeed, in *Meche v. Richard*, 2007 WL 634154 (W.D. La. Feb. 26, 2007), this Court found that Lake Rycade – a nearby body of water in the Basin with virtually identical relevant characteristics to Lost Lake – was navigable, explaining:

> [W]hile the testimony in this matter has established access to Lake Rycade is available only seasonally, that fact in and of itself does not preclude a finding that Lake Rycade is navigable … [T]his Court declines defendant's invitation to conclude seasonal nonnavigability renders waters nonnavigable as a matter of law …
>
> The evidence and testimony in this matter establishes the Lake Rycade area within the Atchafalaya Basin is a body of water that is unique. It is one that is by history and by fact subject to seasonal change and fluctuation. The mere fact that it is subject to seasonal nonnavigability does not, in this Court's opinion, render it nonnavigable.

*See Meche*, 2007 WL 634154, at *3–11 (noting that "there is an approximate three-month period each year in which Lake Rycade [is accessible by water]"); *see also Louisiana Crawfish Producers Ass'n--W. v. Amerada Hess Corp.*, 919 F. Supp. 2d 756, 768 n.13 (W.D. La. 2013), *adhered to on reconsideration* (Mar. 1, 2013), *aff'd sub nom. In Re Louisiana Crawfish Producers,* 772 F.3d 1026 (5th Cir. 2014), *and on reconsideration in part sub nom. Louisiana Crawfish Producers Ass'n - W. v. Amerada Hess Corp.,* 2015 WL 7176111 (W.D. La. Nov. 12, 2015), *aff'd in part, vacated in part sub nom. In re Louisiana Crawfish Producers,* 852 F.3d 456 (5th Cir. 2017) ("Certain portions of the Atchafalaya Basin have been found to be navigable, under certain factual scenarios, at certain points in time.").

Second, the R&R determined – and this Court concurs – that: (i) Lost Lake is accessible through a short canal into the Atchafalaya River for roughly one-third of the year; and (ii) commercial fisherman like Plaintiffs have historically crawfished Lost Lake using small watercraft. [Doc. 69, pp. 6–8]. Given that Lost Lake's accessibility wholly coincides with crawfish season, the Court finds that Lost Lake is accessible "for a significant period of time," and that this period of time is commercially significant in the Basin.[5] *See Meche*, 2007 WL 634154, at *3 (Lake Rycade's navigability "is buttressed by the evidence establishing that [] the number of days when Lake Rycade is navigable coincide with the crawfish season, which is the activity of commercial nature that is the most likely for that area."); *see also Sanders v. Placid Oil Co.*, 861 F.2d 1374, 1377 (5th Cir.1988); *Boudreaux*, 2014 WL 4219446, at *4 n.6; *Dunaway v. U.S.*, 2000 WL 1741870, at *3 (E.D. La. Nov. 20, 2000) ("As long as commercial activity is proved, the particular mode of travel or type of craft … is unimportant[.]").

Finally, Lost Lake is accessible from the Atchafalaya River, a large artery of commerce that provides direct access to the Gulf of Mexico approximately 100 miles

---

[5] As this Court has previously observed, the area surrounding Lost Lake "historically has supported a social structure and society interwoven and interdependent upon the unique waterways of the Atchafalaya Basin." *Meche v. Richard*, 2007 WL 634154, at *5 (W.D. La. Feb. 26, 2007). Indeed, "[c]hildren have gone to school by way of the [Basin's] waterways, livelihoods have, for generations, been made in the Atchafalaya Basin waters, product has been taken to market over the waterways and travel has, by necessity within the Basin, been by boat." *Id.*; *see also* [Doc. 67, pp. 19–32] (where Plaintiff Herby Angelle – a 78-year-old commercial fisherman – describes crawfishing areas throughout the Basin, including Lost Lake); *id.* at p. 34 (where Mr. Angelle describes selling his catch); *id.* at p. 59 (where Mr. Thibodeaux likewise describes selling his catch with Mr. Angelle, his grandfather); *id.* at p. 96 (where Walter Kilgore describes accessing Lost Lake by water and trapping animals for their pelts in the 1950's).

to the south-southeast of Lost Lake. *See Landry v. Columbia Gulf Transmission Co.*, 2007 WL 3104065, at *3 (E.D. La. Oct. 23, 2007); *Boudreaux*, 2014 WL 4219446, at *4 n.5; *see also Respess v. U.S.,* 586 F. Supp. 861, 863 (E.D. La. 1984) ("[T]he Cross-Cut Canal flows into Lake Pontchartrain, a large lake which is an arm of the Gulf of Mexico … Such a waterway has been described as possessing an 'interstate nexus.' In this circuit, that fact alone is [] sufficient to satisfy the navigable waters test.") (cleaned up). All told, the fact that Lost Lake enjoys annual access to the Atchafalaya River for "a [commercially] significant period of time" necessarily means that Lost Lake is "susceptible of being used, in its ordinary condition [and] by uniting with other waters, as a continued highway for [interstate] commerce[.]"[6] *Grubart v. Great Lakes Dredge and Dock Co.*, 513 U.S. 527, 530, 535 (1995); *Sanders v. Placid Oil Co.*,

---

[6] Defendants maintain that *State v. Barras*, 615 So. 2d 285 (La. 1993) and *Parm v. Shumate*, 513 F.3d 135 (5th Cir. 2007) "command the legal determination that Lost Lake is not navigable." [Doc. 74, pp. 6–9]. The Court finds these cases inapposite.

In *State v. Barras*, the Louisiana Supreme Court – relying exclusively upon Louisiana law – found certain Atchafalaya Basin property non-navigable. *See* 615 So.2d at 287–88 (citing A.N. Yiannopoulos, *Louisiana Civil Law Treatise*, Vol. 2, Property, § 69 (3rd ed., West Publishing Company, St. Paul, Minnesota, 1991) and La. C.C. arts. 450, 452, 456). However, the Louisiana Supreme Court analyzed the issue of navigability within the context of *Louisiana* law, and its conclusions therefore have little bearing on the extent of this Court's Article III admiralty jurisdiction. Similarly, in *Parm v. Shumate,* the Fifth Circuit considered whether the navigational servitude burdening the Mississippi River included the right to fish recreationally on the banks of a lake lying three-and-a-half miles away. *See* 513 F.3d at 138, 143–45. Because the Fifth Circuit considered questions of law not presently before the Court, *Parm* – like *Barras* – is not determinative of the reach of this Court's admiralty jurisdiction under Article III. *See id.* at 142–43 ("The [] navigational servitude extends laterally to the entire water surface and bed of a navigable waterway, which includes all the land and waters below the ordinary high water mark … [but] does not create a right to fish [recreationally] on private riparian land."); *see also*, *Kaiser Aetna v. United States*, 444 U.S. 164, 171 (1979) (distinguishing the determination of "navigability" for purposes of the federal navigational servitude from Article III admiralty jurisdiction).

861 F.2d 1374, 1376–78 (5th Cir.1988). Put differently, the Court finds that Lost Lake is navigable-in-fact, and therefore a navigable body of water for the purposes this Court's admiralty jurisdiction.[7]

As noted above, under 28 U.S.C. § 1333, the existence of admiralty jurisdiction depends upon two considerations: (i) whether the facts supporting the Plaintiffs' claims occurred on navigable water; and (ii) whether the facts supporting the claims "[relate] to the objectives of admiralty jurisdiction." *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 533 (1995); *see also* [Doc. 40, p. 9] ("[A]dmiralty jurisdiction can be exercised over a tort [only] where both the 'location test' and the 'connection' test are satisfied"). Because the Court has already found the "connection" test satisfied, *see generally* [Doc. 40], this Memorandum Ruling finally determines that this matter is properly within the Court's grant of admiralty jurisdiction under § 1333.

Accordingly, Defendants' Motion [Doc. 24] is DENIED.

---

[7] The fact that the state of Louisiana does not presently consider Lost Lake navigable is "significant" but "not determinative." *See Meche v. Richard,* 2007 WL 634154, at *8 (W.D. La. Feb. 26, 2007); *Sanders v. Placid Oil Co.*, 861 F.2d 1374, 1378 (5th Cir.1988); *Boudreaux v. Louisiana Dept. of Wildlife & Fisheries*, 2014 WL 4219446, at *8 (W.D. La. Aug. 22, 2014) ("Whether or not the area in question is claimed by [Louisiana] as a navigable waterway is not determinative of admiralty jurisdiction."); *see also Dunaway v. U.S.,* 2000 WL 1741870, at *3 (E.D. La. Nov. 20, 2000) (collecting cases and noting that "admiralty jurisdiction [under Article III] turns on current navigability.").

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that the Court OVERRULES the Defendants' Objections to the R&R [Doc. 74].

IT IS FURTHER ORDERED that the Court ADOPTS IN PART and OVERRULES IN PART the R&R [Doc. 69] as stated herein.

IT IS FURTHER ORDERED that Defendants' Motion for Reconsideration [Doc. 70] is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss [Doc. 24] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 8th day of June 2023.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE