## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**DEVIN THIBODEAUX, ET AL**       **CIVIL DOCKET NO. 6:21-CV-00061**

**VERSUS**       **JUDGE DAVID C. JOSEPH**

**ADAM BERNHARD, ET AL**       **MAGISTRATE JUDGE CAROL B. WHITEHURST**

## MEMORANDUM RULING

The matter before the Court involves a dispute between local crawfishermen and landowners over the right to harvest crawfish on a body of water known as "Lost Lake" in St. Martin Parish, Louisiana. Having previously lost their bid to have this matter dismissed on jurisdictional grounds, the Defendants – Adam Bernhard, Kenneth W. Bernhard, Seth Bernhard, and Kerkas, LLC (hereinafter "Defendants") – now file a CONSOLIDATED MOTION FOR COMPLETE SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 (the "Motion") [Doc. 112], arguing again that this Court lacks admiralty jurisdiction over this dispute and otherwise seeking summary dismissal of Plaintiffs' claims. Plaintiffs Devin Thibodeaux and Herby Angelle, (hereinafter, "Plaintiffs"), oppose the Motion, [Doc. 133], and the Defendants have filed a Reply, [Doc. 145]. In addition to the substantive briefing, the parties have filed a number of motions to strike (collectively, the "Motions to Strike").[1]  For the following reasons,

---

[1]      Plaintiffs filed a Motion to Strike or Dismiss Defendants' Motion for Summary Judgment [Doc. 118], to which Defendants responded, [Doc. 130], and Plaintiffs filed a Reply, [Doc. 131]. Defendants then filed a Motion to Strike Plaintiffs' Reply to Defendants' Statement of Undisputed Material Facts, [Doc. 141], to which Plaintiffs responded, [Doc. 155], and Defendants filed a Reply, [Doc. 157]; a Motion to Strike Plaintiffs' Statement of Undisputed Facts, [Doc. 142], and a Motion to Strike Plaintiffs' Improper, Untimely-Filed Exhibits to Plaintiffs' Opposition to Defendants' Consolidated Motion for Summary

each of the Motions to Strike is DENIED; Defendants' MOTION FOR SUMMARY JUDGMENT is GRANTED on the specific claims asserted by the Plaintiffs; and all of Plaintiffs' claims are therefore DENIED AND DISMISSED WITH PREJUDICE.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs in this case, both of whom are commercial crawfishermen, trap and harvest crawfish in North America's largest floodplain swamp, the Atchafalaya River Basin. [Doc. 69, p. 3]. One of the areas in the Basin frequently crawfished by Plaintiffs is "Lost Lake," a perched lake "situated in a crook of undeveloped swampland between the Atchafalaya River and the Butte La Rose Cutoff Channel" (the "Channel"). *Id.* at p. 6. In the weeks before January 25, 2020, Plaintiffs set approximately 700 of their crawfish traps on Lost Lake, which can be accessed by navigating through a small canal from the Atchafalaya River. [Doc. 21, ¶ 3]. Plaintiffs allege that on January 25, 2020, while they were attempting to retrieve their crawfish traps in Lost Lake, Defendants Adam Bernhard and Seth Bernhard forcefully intercepted Plaintiffs' skiff with their own boat, verbally accosted them, and ordered them to retrieve their traps and never return. [Doc. 21, ¶ 5]. The Defendants also summoned St. Martin Parish Sheriff's Deputy John Dauphine, who issued criminal trespass citations and told the Plaintiffs to leave the lake. *Id.* Plaintiffs contend that they were thereafter unable to access their crawfish traps for two and a half days.

---

Judgment, [Doc. 144], to which Plaintiffs filed a response, [Doc. 153], and Defendants filed a Reply, [Doc. 156].

On January 11, 2021, Plaintiffs filed suit in this Court pursuant to the Court's admiralty jurisdiction. *Id.* Since their original filing, Plaintiffs have twice amended their Complaint. [Docs. 3, 21]. In their Complaints, Plaintiffs allege that this incident prevented them from harvesting crawfish in the area of Lost Lake for the remainder of the crawfish season, hindered their ability to engage in commercial crawfishing, and caused them to suffer economic damage in violation of La. R.S. § 56:648.1. *Id.* at p. 6. Plaintiffs also assert that they are entitled to damages because of Defendants' conversion of their property. *Id.* On November 16, 2021, Defendants filed a Rule 12 Motion, asserting that the Court lacked subject matter jurisdiction over this dispute. [Doc. 24]. The Court ultimately concluded that it has admiralty jurisdiction, [Docs. 40, 88], a finding that has been affirmed by the Fifth Circuit.[2] *See Thibodeaux v. Bernhard,* 2024 WL 3181458 (5th Cir. June 26, 2024).

Defendants argue again in the instant Motion that the Court lacks jurisdiction over the Plaintiffs' claims, and that Plaintiffs' claims for violation of La. R.S. § 56:648.1 and conversion fail as a matter of law. All issues having been fully briefed by the parties, the Motion is now ripe for review.

<u>SUMMARY JUDGMENT STANDARD</u>

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In applying

---

[2] For an in-depth discussion of the procedural history of this case, and the Court's discussion of admiralty jurisdiction in this matter, *see* [Doc. 88, pp. 3-5].

this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there are no genuine disputes of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id., citing Celotex*, 477 U.S. at 323. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine dispute for trial – and thus a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party[.]" *Id.*

<u>L</u>AW AND <u>A</u>NALYSIS

## I.    Motions to Strike

As a preliminary matter, the Court addresses the various Motions to Strike filed by the parties.  First, Plaintiffs' MOTION TO STRIKE OR DISMISS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, [Doc. 118], which seeks to strike Defendants' substantive Motion because: (i) subject matter jurisdiction has already been established in this case; and (ii) the Defendants utilized an improper procedural vehicle to bring the Motion, is denied.  While it is true that the Defendants styled their Motion as one for summary judgment, the Court construes that portion of the Motion addressing the Court's subject matter jurisdiction as seeking dismissal for lack of jurisdiction pursuant to Rule 12(b)(1).[3]  *See United States v. One 1988 Dodge Pickup*, 959 F.2d 37, 39 (5th Cir. 1992) ("[I]t is clear that the proper characterization of the motion for these purposes is not determined by the label that the motion bears.").  Although, as discussed below, the jurisdictional issues raised have already been decided, Defendants' challenge is not untimely filed because it relates to the issue of this Court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).

Furthermore, Defendants' MOTION TO STRIKE PLAINTIFFS' REPLY TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS, [Doc. 141], and MOTION

---

[3]     Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *citing Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996).

TO STRIKE PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS, [Doc. 142], are likewise denied.  The Court encourages the parties to review the Local Rules prior to engaging in future litigation in this Court to avoid the filing of unnecessary motions.  The Local Rules no longer require a separate statement of uncontested material facts and any such filings are not considered by the Court.  Local Civil Rule 56 (W.D. La).  Lastly, the Court denies Defendants' MOTION TO STRIKE PLAINTIFFS' IMPROPER, UNTIMELY FILED EXHIBITS TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT, [Doc. 144], because Plaintiffs' response was timely filed, and their initial omission of exhibits was clearly a clerical error.

## II.    Admiralty Jurisdiction

The Court briefly addresses Defendants' argument that new evidence showing the Atchafalaya River's ordinary low water mark warrants reconsideration of the Court's finding – affirmed by the Fifth Circuit – that this Court has admiralty jurisdiction over the Plaintiffs' claims.  Arguing that the "newly-discovered" low water mark of the Atchafalaya River establishes that Lost Lake is landlocked, Defendants contend that Lost Lake therefore cannot be navigable, as interstate travel through a landlocked waterway is not possible.[4]   In continuing to press this issue, the Defendants invoke the Court's continuing obligation to establish subject matter jurisdiction at every state of litigation.  Plaintiffs respond that the "law of the case" doctrine precludes this Court's reexamination of the jurisdictional issue.

---

[4]    More specifically, Defendants posit that Lost Lake is landlocked because the low water mark of the Atchafalaya River sits at a level below the bottom of the canal connecting Lost Lake with the Atchafalaya River.

"The law of the case doctrine, as formulated in this circuit, generally precludes reexamination of issues of law or fact decided on appeal, either by the district court on remand or by the appellate court itself on a subsequent appeal." *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001). The doctrine is "premised on the salutary and sound public policy that litigation should come to an end." *Alpha/Omega Ins. Servs.,* 272 F.3d at 279, *citing Terrell v. Household Goods Carriers' Bureau,* 494 F.2d 16, 19 (5th Cir. 1974). But, as the Supreme Court explained in *Arizona v. California*, despite its importance, the "law of the case" doctrine "is an amorphous concept" with no "precise requirements." 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L.Ed.2d 318 (1983). In the Fifth Circuit, the doctrine "applies only to issues that were actually decided, rather than all questions in the case that might have been decided but were not," however, when issues have not been expressly addressed in a prior decision, if those matters were "fully briefed to the appellate court and ... necessary predicates to the [court's] ability to address the issue or issues specifically discussed, [those issues] are deemed to have been decided tacitly or implicitly, and their disposition is law of the case."[5] *Id.*

---

[5]    Exceptions to the law of the case doctrine allow reexamination of issues decided on appeal only if "(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice." *Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 624 F.3d 698, 702 (5th Cir. 2010).

Notably, subject matter jurisdiction is not a *per se* exception to the law of the case doctrine. As the Fifth Circuit explained in *Free v. Abbott Lab'ys, Inc.*, "[c]ertainly, a federal court must always be satisfied that subject matter jurisdiction exists and must even raise the issue *sua sponte* ... [but plaintiffs] advocate a quite different rule of perpetual re-examination of precisely the same issue of subject matter jurisdiction. Other circuits have ... refused to recognize a 'jurisdiction exception' to the law of the case doctrine. We see no reason to deviate from the weight of authority.'" 164 F.3d 270, 272-73 (5th Cir. 1999) (internal citations in

The Defendants acknowledge that they argued that Lost Lake is landlocked at the appellate level, both in oral argument before the Fifth Circuit, and in a motion for rehearing filed after the Fifth Circuit rendered its opinion. Although the Fifth Circuit did not address the argument in either its opinion or its decision to deny rehearing, it is clear that Defendants' argument that Lost Lake is landlocked was put before the Fifth Circuit, which nevertheless agreed with the Court's finding that Lost Lake is a navigable waterway. *Thibodeaux v. Bernhard*, 2024 WL 3181458, at *6 (5th Cir. 2024). Consequently, the argument that Lost Lake is landlocked was decided by "necessary implication" and was rejected by the Fifth Circuit. For this reason, the finding that Lost Lake is not "landlocked" is, at first blush, the law of the case.

Defendants argue that the issue of admiralty jurisdiction should nevertheless be reconsidered by this Court because there is "substantially different evidence" in the case since the Fifth Circuit's finding that admiralty jurisdiction exists, which would satisfy one of the exceptions to the law of the case doctrine. Specifically, Defendants argue that their engineer and land surveyor, Robert Wolfe, Jr., surveyed Lost Lake "from the Atchafalaya River to the Butte La Rose Cutoff Channel," and opined in his November 16, 2024, Supplemental Surveying Report as follows:

> … [t]he only adjacent lands to the subject property that were public was the Atchafalaya River. By law this boundary is described as the Ordinary Low Water Mark. The island is completely landlocked and

---

footnote), *citing Ferreira v. Borja,* 93 F.3d 671, 674 (9th Cir.1996), *cert. denied,* 519 U.S. 1122, 117 S. Ct. 972, 136 L.Ed.2d 856 (1997) ("Surely a court that has decided that it has jurisdiction is not duty-bound to entertain thereafter a series of repetitive motions to dismiss for lack of jurisdiction."); *LaShawn v. Barry,* 87 F.3d 1389, 1394 (D.C.Cir.1996), *cert. denied,* 520 U.S. 1264, 117 S. Ct. 2431, 138 L.Ed.2d 193 ("[T]his court and other courts of appeals routinely apply law-of-the-case preclusion to questions of jurisdiction[.]").

> under private ownership.  Lost Lake is not an actual lake but rather a low lying bottom that floods a portion of the year.

[Doc. 112-10, p. 6].  But this evidence is not "substantially different" from the evidence already considered by the Court.  This Court has already heard evidence that Lost Lake is a "perched" lake, meaning "the bottom of the lake is above the mean level of water in the surrounding river channels[.]"  [Doc. 65-4, p. 1]; [Doc. 67, pp. 110-11, 161].  Thus, the Court has already considered Defendants' evidence in this regard.

Furthermore, Mr. Wolfe's original 2023 Report indicates that the ordinary low water mark of the Atchafalaya River – for which no value was given at that time but was certainly known – was surveyed and plotted with the use of a drone.[6]  [Doc. 65-29, pp. 3-4].  And to the extent that the Defendants are arguing the existence of "new evidence," Lost Lake and its surrounding areas have been available for examination by the parties throughout the entirety of this proceeding, and there was ample time for the parties to conduct any desired studies, testing, or measurements prior to the Court's determination that admiralty jurisdiction exists.  *See, e.g., McKay v. Novartis Pharm. Corp.,* 751 F.3d 694, 704 (5th Cir. 2014) ("This testimony was available to the McKays almost two years before they filed their May 22, 2011 motion … the evidence available in the remand court was not substantially different."); *Lyons v. Fisher*, 888 F.2d 1071, 1075 (5th Cir. 1989) ("Thus, the district court properly denied Fisher the right on remand to offer evidence that he had had every opportunity and incentive to produce at the earlier proceeding.").  Here, the Court went through great lengths to

---

[6]     *See also* [Doc. 65-31, p. 23] ("Ordinary low water was surveyed by drone on October 10, 2022, by Ryan Fusilier P.E., P.L.S.").

make its factual determinations in this case – holding an evidentiary hearing and carefully considering the evidence adduced.    [Doc. 67, *Official Transcript of Evidentiary Hearing*].

For all these reasons, the Court finds that Defendants fail to present "substantially new evidence" that warrants reconsideration of the Court's finding of admiralty jurisdiction.

### III.    Plaintiffs' Claims

A comprehensive review of the Plaintiffs' Complaint [Doc. 1], First Amending Complaint [Doc. 3], and Second Amending Complaint [Doc. 21] establishes that Plaintiffs allege two claims in this matter: (i) harassment of fishermen in violation of La. R.S. § 56:648.1; and (ii) conversion.  To the extent that the Plaintiffs argue in their summary judgment briefing that they have also pled tort claims of assault, false imprisonment, malicious prosecution, and abuse of process, the Court finds that no such claims were adequately pled under the notice pleading standard, which requires, in relevant part, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To meet this standard, a complaint need not plead specific facts but must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1964, 167 L.Ed.2d 929 (2007).  Here, the Complaints do not put Defendants "on notice that they must defend" claims of assault, false imprisonment, malicious prosecution, abuse of process, or any other claim not properly pled.  [Docs. 1, 3, 21].  *Anderson v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 525, 529 (5th Cir.

2008).   Rather, the claims pled are rooted in Plaintiffs' allegations that the Defendants interfered with their crawfishing operations causing them to sustain economic damages.   Tellingly, the Plaintiffs' Second Amending Complaint – just like the prior iterations – is organized into two sections titled "First Cause of Action" and "Second Cause of Action," which correspond to the two claims set forth *supra*.   *See* [Docs. 1, 3, 21].   Finally, it is axiomatic that the Plaintiffs cannot raise new claims for the first time in their summary judgment briefing.   *See, e.g., U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) ("We also conclude that the district court did not err in denying [plaintiff's] motion for partial summary judgment because he attempted to raise a new claim, not asserted in his fifth amended complaint."), *citing Fisher v. Metro. Life Ins. Co.,* 895 F.2d 1073, 1078 (5th Cir. 1990).   For these reasons, the Court finds that Plaintiffs have only properly pled claims for harassment of fishermen in violation of La. R.S. § 56:648.1 and conversion.

### A. Violation of La. R.S. § 56:648.1

Plaintiffs' first claim alleges a violation of Louisiana Revised Statute § 56:648.1, which provides in relevant part:

> No person shall engage in any of the following activities on lands or waters managed by the state or upon private lands or waters where a hunter, trapper, or fisherman has been given permission by the owner or his agent to take wild animals:
>
> > (1) Interfere with the lawful taking of a wild animal by a hunter, trapper, or fisherman or interfere with the process of taking, with intent to prevent the taking.
>
> > [ . . . ]

> (3) Disturb any hunter, trapper, or fisherman who is engaged in the lawful taking of a wild animal or who is engaged in the process of taking, with intent to dissuade or otherwise prevent the taking, or to prevent such person's enjoyment of the outdoors.

La. R.S. § 56:648.1.[7]

Defendants argue they are entitled to judgment on Plaintiffs' § 56:648.1 claim because the State of Louisiana does not manage Lost Lake, Plaintiffs have admitted they did not have permission to crawfish on Defendants' private property, and Plaintiffs were trespassing on Defendants' property. [Doc. 112-1, pp. 15-18]. Without addressing the specific requirements of the statute under which they sued, the Plaintiffs respond that Lost Lake is subject to a public use servitude rendering trespass impossible. [Doc. 133, pp. 21-23].

The Court next addresses the imprecise arguments from the parties concerning the existence and implications of any navigational servitudes over Lost Lake. As the Fifth Circuit noted in its ruling on the jurisdictional question, the imprecision of the parties' arguments "is characteristic of a broader trend in the parties' briefing." *Thibodeaux v. Bernhard*, 2024 WL 3181458 at *5 (5th Cir. June 26, 2024). This Court agrees. And while the parties' briefing focuses primarily on the existence and effects

---

[7]    La. Stat. § 56:648.2(B) provides a private right of action for violations of La. Stat. § 56:648.1, as follows:

> B. Any person adversely affected by a violation of R.S. 56:648.1 shall be entitled to recover actual damages, including expenditures of the affected person for license and permit fees, travel, guides, special equipment and supplies, to the extent that such expenditures were rendered futile by the actions of the person violating the provisions of this Section.

of navigational servitudes, the statutory cause of action pled by Plaintiffs, La. R.S. § 56:648.1, is not dependent upon the existence of a servitude. Rather, the statute only provides a cause of action for interference or disruption of the lawful taking of a wild animal by a hunter or fisherman on lands or waters *managed by the state* or upon which *permission has been given.*[8] The Defendants proffer a letter from the State of Louisiana in which the State expressly indicates that it does not claim ownership or domain over Lost Lake, nor does it manage the lake. [Doc. 65-33].[9] Furthermore, it is undisputed that the Defendants did not give the Plaintiffs permission to fish on Lost Lake and take crawfish. [Doc. 112-19]; [Doc. 112-7, *Herb Angelle and Devin Thibodeaux's Response to Requests for Admission,* p. 1].[10] Therefore, La. R.S. § 56:648.1 does not provide Plaintiffs' a cause of action on these facts.

---

[8]    Examining the language of the statute itself serves as the starting point of statutory interpretation. *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 998 So. 2d 16, 26-27 (La. 2008). When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. La. Civ. Code art. 9; La. R.S. § 1:4.

[9]    Additionally, Subpart F of Title 56, entitled "Upland Wildlife Refuges, Wildlife Management Areas and Public Hunting Grounds" (§ 781 to § 787), governs the State's management of public wildlife areas. Under these statutes, property managed by the State pursuant to La. R.S. § 56:781 through La. R.S. § 56:787 encompass lands "selected for use as wildlife refuges, wildlife management areas, public hunting grounds, upland game preserves, and wildlife sanctuaries, and notice of such selection and dedication published as herein provided." La. R.S. § 56:786. There is no evidence in the record that Lost Lake fits this description.

[10]    "Request for Admission Number 1: Admit or deny that on January 25, 2020, you did not have the written or verbal authority (i.e., a written lease or other kind of authority) of Kerkas, LLC ("Kerkas") to crawfish on property owned by Kerkas. Response: Admitted. However, no permission or authority was required as the area fished was navigable in fact and in law and public access was afforded to all who entered the area." [Doc. 112-7, p. 1]. *Contra* [Doc. 133, Ex. D-28, *Kerkas, LLC Crawfish Lease*] (crawfish lease in which Kerkas, LLC expressly grants authority to crawfish on Lost Lake to 5 lessees).

And to the extent the Plaintiffs allege that § 56:648.1's "lawful taking" language gives rise to a colorable claim that they can crawfish on Lost Lake by virtue of a state law right of use, a plain reading of the statute shows that this argument is without merit. Under La. R.S. § 56:648, the "process of taking" is defined as "any act directed at the lawful taking of a wild animal, including the acts of travel, camping, or other activity occurring in preparation for the taking which occurs on *state-managed lands or waters* or which occurs on private lands or waters with the *permission of the owner or his agent*." La. R.S. § 56:648 (emphasis added). Here again, because Plaintiffs fail to substantiate that the State managed Lost Lake or that they were given permission by the Defendants to crawfish on their property, their argument fails.

Next, with respect to Plaintiffs' argument that a state servitude of public use arises by operation of law by virtue of the State's ownership of Lost Lake, the Court finds such a claim is better advanced by the State, which has neither intervened in this lawsuit nor otherwise claimed ownership of Lost Lake. As such, and in light of the fact that the State has pointedly disavowed ownership of Lost Lake, federalism concerns – as well as potential Takings Clause[11] concerns – militate against this Court making any such finding. To hold otherwise would result in a federal court

---

[11]    Generally, The Takings Clause of the Fifth Amendment, as applied against the States through the Fourteenth Amendment, bars the State from taking private property without paying for it, no matter which branch is the instrument of the taking. *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 130 S. Ct. 2592, 177 L.Ed.2d 184 (2010), *citing* U.S.C.A. Const. Amends. 5, 14. *See also Kaiser Aetna v. United States,* 444 U.S. 164, 177, 100 S. Ct. 383, 391, 62 L.Ed.2d 332 (1979) (federal navigational servitudes over private property may raise takings concerns).

sitting in admiralty bestowing ownership upon the State – with all the incumbent obligations and liabilities – of heretofore privately owned property for which it makes no claim. At bottom, the nature of Plaintiffs' allegations and the posture of this case do not put the issue of the existence of a state servitude of public use squarely before the Court.[12]

The Plaintiffs next argue that they are permitted to crawfish on Lost Lake by virtue of a federal navigational servitude, which arises under the Commerce Clause in navigable waters. *Kaiser Aetna,* 444 U.S. at 177, 100 S. Ct. at 391. However, such servitudes do not extend to all navigable waters. *Dardar v. Lafourche Realty Co., Inc.,* 985 F.2d 824 (5th Cir. 1993). In *Kaiser,* the Supreme Court made clear that the federal navigational servitude does not mechanically attach to all navigable waters, and that when the servitude does exist, its purpose is to provide the public with use of those waterways as "continuous highways for the purpose of navigation in interstate commerce." *Id.* at 178, 100 S. Ct. at 392. A landowner whose properties contain navigable waterways may contest the existence of this servitude by showing either that the waterways were not navigable in their natural state or, if naturally

---

[12]    Of course, consideration of the existence of public use servitudes may arise in cases where specifically pled and necessary to resolve the case. *See, e.g., Dardar v. Lafourche Realty Co.,* 985 F.2d 824, 826 (5th Cir. 1993) (plaintiffs, commercial fishermen, sued seeking the right to use a system of navigable waters; State of Louisiana intervened, asserting a right of public use of the waters and claiming title to the water bodies and over twelve thousand acres of land under the waters); *Buckskin Hunting Club v. Bayard*, 868 So. 2d 266 (La. App. 3rd Cir. 2004) (lessee of hunting property sought TRO and injunction against other hunters); *State v. Barras*, 615 So. 2d 285 (La. 1993) (defendants convicted of trespass; writ was granted to review the question of whether defendants were proven to be on privately owned property); *Carpenter v. Webre*, 2018 WL (E.D. La. March 23, 2018) (plaintiff asserted claims under §§1983, 1985, general maritime negligence/intentional tort, Louisiana negligence/intentional tort, and restraint of interstate trade).

navigable, by demonstrating that his interests outweigh those of the public.    In evaluating these competing interests, courts must determine whether the waterway: (i) was navigable in its natural state and is comparable to other waterbodies upon which the servitude has been imposed; (ii) is on private property and made navigable with private funds; and (iii) was made navigable by actions approved by the Corps of Engineers. *Dardar v. Lafourche Realty Co.*, 55 F.3d 1082, 1085 (5th Cir. 1995).

And like the court in *Parm*,[13] federalism concerns, and concerns about the sovereignty of Louisiana in governing waterbodies such as Lost Lake, counsel against this Court holding that a federal navigational servitude confers the right to commercially crawfish on privately owned land.    In this regard, the Court notes that the federal navigational servitude is concerned with *navigational* rights and *commerce*, and likely does not encompass a right for commercial fishermen to harvest crawfish from privately-owned property.    *Parm v. Shumate*, 513 F.3d 135, 143 (5th Cir. 2007); *see also Dardar v. Lafourche Realty Co.*, 55 F.3d 1082, 1084 (5th Cir. 1995) (waters encumbered by federal navigational servitude are subject to public use as "continuous highways for the purpose of navigation in interstate commerce.").

Considering the foregoing, under the claim alleged by the Plaintiffs and for the reasons described, the Court concludes that Plaintiffs' claims pursuant to La. R.S.  § 56:648.1 fails as a matter of law.

---

[13]    513 F.3d at 143-44 ("In any event, as things now stand, the right to fish on public trust lands is governed by Louisiana law, and there is no reason for us to displace that law by adopting a federal rule of decision in this context."), *citing Wallis v. Pan Am. Petroleum Corp.,* 384 U.S. 63, 68, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966) (stating that it is for Congress to decide whether latent federal power should be exercised to displace state law).

### B. Plaintiffs' Conversion Claims

"In Louisiana, conversion is an intentional tort and consists of an act in derogation of the plaintiff's possessory rights." *Melerine v. O'Connor*, 135 So. 3d 1198, 1203, (La. App. 4th Cir. 2014), *citing Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So.2d 756, 760 (La.1985).[14]  "To constitute a conversion, an intentional dispossession and/or exercise of dominion or control *over the property of another* in denial of or inconsistent with the owner's rights must be established." *Id.* (emphasis added). *See also An Erny Girl, L.L.C. v. BCNO 4 L.L.C.*, 257 So.3d 212, 222 (La. App. 4th Cir. 2018) ("Ownership of the allegedly converted goods is the main requirement for conversion.").  The intent required for a conversion is not necessarily that of conscious wrongdoing, but is, rather, an intent to exercise a dominion or control over the goods which is in fact inconsistent with the owner's rights. *See Louisiana State Bar Ass'n v. Hinrichs*, 486 So.2d 116, 121 (La. 1986).  Thus, under Louisiana law, a conversion occurs when *any* of the following occur: (1) possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted

---

[14]    The Louisiana Civil Code itself does not identify causes of action for "conversion." However, causes of action for conversion have been inferred from the Code articles providing that the right of ownership, possession, and enjoyment of movables is protected by actions for the recovery of the movables themselves, actions for restitution of their value, and actions for damages. *Dhaliwal v. Dhaliwal*, 49,973 (La. App. 2d Cir. 11/25/15), 184 So. 3d 773, *writ denied*, 16-0236 (La. 4/4/16), 190 So. 3d 1204.

over the chattel. *Dual Drilling Co. v. Mills Equip. Invs.*, 721 So.2d 853, 857 (La. 1998).

Plaintiffs' conversion claim is amorphous. In their Second Amending Complaint, Plaintiffs allege that Defendants' actions constitute conversion, because "Defendants intentionally took possession of Plaintiffs' crawfish traps and harvestable crawfish, and deprived Plaintiffs of their use of the same." [Doc. 21, p. 9]. Yet, in their response to Defendants' Motion, Plaintiffs appear to largely abandon any claim that their traps were converted. It is also unclear whether the Plaintiffs seek conversion damages for the precise harvest they allege they lost on January 25, 2020, or future conversion damages occasioned by their inability to crawfish in Lost Lake after that date. In their Motion, Defendants contend that Plaintiffs' conversion claims fail because Plaintiffs cannot establish ownership of the crawfish. [Doc. 112-1, pp. 18-20]. Plaintiffs respond that Defendants' actions constitute a "constructive conversion" – i.e., an interference with their rights prior to physical appropriation of a moveable – because crawfish are owned by the fisherman once lawfully taken and Defendants interfered with Plaintiffs' ongoing crawfish harvesting operations. [Doc. 133, p. 19].

As for their claim that the Defendants took possession of the Plaintiffs' "harvestable crawfish," the Plaintiffs fail to show any ownership interest in the crawfish in Lost Lake. As explained by the Louisiana Supreme Court, "[t]he lack of any property interest in the fish in the waters is well-settled, statutorily and judicially." *Louisiana Seafood Mgmt. Council v. Louisiana Wildlife & Fisheries*

*Comm'n,* 715 So.2d 387, 392 (La. 1998), *citing* La. Civ. Code arts. 450, 452; La. R.S. § 56:3.[15]  *See LaBauve v. Louisiana Wildlife & Fisheries Comm'n,* 444 F. Supp. 1370, 1378 (E.D. La. 1978) ("The Louisiana Supreme Court has expressly held that fish which are at large in state waters are the property of the state, as public or common things under articles 453 and 450 of the Louisiana Civil Code, and that an individual has no proprietary interest in the fish he is prevented from catching.").  *See also* La. Civ. Code art. 3413 ("Wild animals, birds, fish, and shellfish in a state of natural liberty either belong to the state in its capacity as a public person or are things without an owner. … [C]aptured wildlife belongs to the captor.").  To the extent that the Plaintiffs argue they were prevented from harvesting crawfish and this constitutes a conversion, they have no actionable conversion claim, as they had no ownership interest in the unharvested crawfish in the waters in Lost Lake.

Furthermore, although Plaintiffs *argue* that the contents of traps – *i.e.*, harvested crawfish – are movable property owned by fisherman upon lawful taking, Plaintiffs proffer no summary judgment evidence that their traps actually contained harvested crawfish at the time they were ordered by Sgt. Dauphine to leave Lost Lake.  In fact, a careful reading of the Plaintiffs' Second Amending Complaint shows that the Plaintiffs allege that "Defendants intentionally took possession of Plaintiffs' crawfish traps and *harvestable* crawfish…".  [Doc. 21, ¶ 9].  Merriam-Webster defines "harvest" as, *inter alia*, "to gather, catch, hunt, or kill (salmon, oysters, deer, etc.) for

---

[15]    La. R.S. § 56:3 states that "[t]he ownership and title to all wild birds, and wild quadrupeds, fish, other aquatic life, … including all oysters and other shellfish … are and remain the property of the state."

human use, sport, or population control" and "to accumulate a store of." MERRIAM-WEBSTER (11th ed. 2024). "Harvestable" is defined as "capable of being harvested." COLLINS ENGLISH DICTIONARY (14th ed. 2024). Here, the Plaintiffs proffer no evidence that their traps were full of already-harvested crawfish at the time of the incident. Rather, Plaintiffs specifically claim that the Defendants took possession of crawfish that *could be, but had not already been, harvested*. Under Louisiana law, unharvested crawfish are not owned by the crawfisherman. *See LaBauve v. Louisiana Wildlife & Fisheries Comm'n,* 444 F. Supp. 1370, 1378 (E.D. La. 1978) and La. Civ. Code arts. 453, 450, and 3413, *supra*. Furthermore, to the extent that there was, in fact, crawfish in the traps set by the Plaintiffs, the Plaintiffs have proffered no evidence showing that Defendants forced them to empty their traps and leave this crawfish behind. Rather, the evidence is that the Plaintiffs were able to gather their crawfish traps two and a half days later and, presumably, take possession of any crawfish therein. [Doc. 21, ¶ 5]. Thus, Plaintiffs fail to satisfy the elements of their conversion of crawfish claim as to either harvested or harvestable crawfish.

Finally, as for the traps themselves, as the Court has noted, the factual basis of the Plaintiffs' claims regarding their traps is unclear.[16] Regardless, in support of

---

[16]    In their original Complaint, the Plaintiffs simply alleged that Defendants ordered them to retrieve their traps and leave, which Plaintiffs did. In this original Complaint, although the Plaintiffs appear to allege a claim for conversion of their traps, the Plaintiffs' only damages are identified as "$30,000 each," representing the loss of sales of crawfish. [Doc. 1, ¶ 7]. In their First Amending Complaint, Plaintiffs' allegations about the traps remain the same. [Doc. 3, ¶ 5]. In their Second Amending Complaint, however, the Plaintiffs allege that they were not allowed to complete harvesting from the remaining traps on January 25, 2020, and they could not retrieve their crawfish traps before they left because: (a) they were told to

their Motion, the Defendants offered the testimony of Sgt. John Dauphine, who testified that, at the time of the incident, Plaintiffs contacted their attorney, who advised them to leave their crawfish traps and retrieve them later. [Doc. 112-5, *Deposition of Sgt. John Dauphine*, pp. 62-63]. Sgt. Dauphine further testified that, when he issued trespass citations to the Plaintiffs, he informed the Plaintiffs that the property owner, Mr. Bernhard, gave them one week to continue crawfishing and to pick up their traps and leave the property for good. *Id.* at p. 62. This evidence is not controverted by the Plaintiffs. In fact, there is no evidence in the record that the Plaintiffs were prohibited from retrieving their traps at the time they were cited by Sgt. Dauphine. Nor have the Plaintiffs provided any evidence that they were forced to leave their traps in Lost Lake. Rather, there is evidence that Plaintiffs were given a window to retrieve the traps. What is clear from the record is that the *Defendants did not want the traps there*, and at no time took action to possess them. Therefore, the Plaintiffs fail to satisfy a required element of a Louisiana conversion claim, that is, an intent to exercise a dominion or control over the goods that is inconsistent with another's rights. *Dual Drilling Co*, 721 So.2d at 857.

---

leave immediately, and (b) their small skiffs were loaded with bagging equipment for harvesting crawfish from the traps and crates of bait for re-baiting the traps. [Doc. 21, ¶ 5]. In this Complaint, the Plaintiffs allege that they collected their traps approximately two and a half days after the January 25, 2020, incident. *Id.*

For these reasons, the Court finds that, to the extent the Plaintiffs are alleging a claim for conversion of their crawfish traps, the Defendants are entitled to summary judgment on that claim.[17]

CONCLUSION

For the foregoing reasons, the Court finds that there are no genuine disputes of material fact that preclude summary judgment in Defendants' favor on Plaintiffs' La. R.S. § 56:648.1 and conversion claims. Fed. R. Civ. P. 56.

Accordingly,

IT IS HEREBY ORDERED that Defendants' CONSOLIDATED MOTION FOR COMPLETE SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 [Doc. 112] is GRANTED and all of Plaintiffs' claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that:

1) Plaintiffs' MOTION TO STRIKE OR DISMISS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. 118] is DENIED;

2) Defendants' MOTION TO STRIKE PLAINTIFFS' REPLY TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS [Doc. 141] is DENIED;

3) Defendants' MOTION TO STRIKE PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS [Doc. 142] is DENIED; and

4) Defendants' MOTION TO STRIKE PLAINTIFFS' IMPROPER, UNTIMELY-FILED EXHIBITS TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT [Doc. 144] is DENIED.

---

[17]    The Court having concluded that the Defendants are entitled to summary judgment on both of Plaintiffs' claims, it is unnecessary for the Court to consider the parties' extensive briefing on the issue of damages.

THUS, DONE AND SIGNED in Chambers on this 10th day of June 2025.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE